## W. B. WALKER v. THE STATE.

### No. 6155.  Decided March 23, 1921.

**1.—Tick Eradication—Validity of Statute—Ex Post Facto Law.**

Where it is manifest, if it be granted that that part of the law objected to was not enforceable, the prosecution might be maintained under that part of the law which was not subject to the supposed vice, there is no reversible error. Following Ex parte Towles, 48 Texas, 413, and other cases; besides the language objected to in the law could not properly be classified as an *ex post. facto* law, and, did not operate in the instant case.

**2.—Same—Notice—Dipping—Place Designated—Statutes Construed.**

Where, defendant refused to have his cattle dipped at the place designated by the Commission, because the solution provided in the dip was not prescribed by law, but the record showed that the State's evidence showed that the solution provided was prescribed by law, and came within its scope and provisions, there was no reversible error.

**3.—Same—Charge of Court—Affidavit—Live Stock Sanitary Commision—Plea of Not Guilty.**

Where, upon trial of a violation of the tick eradication law, the defendant objected to that portion of the court's charge that makes it the duty of the defendant, when he has any objections to dipping his cattle, that he file his objections in the form of an affidavit with the Live-stock Sanitary Commission, and that the charge abridged his right under his plea of not guilty, etc., but the record showed on appeal that the court's charge was not in conflict with the provisions of the statute, and did not deprive defendant of his right to urge his defense under the plea of not guilty, there was no reversible error.

Appeal from the County Court of Gregg.  Tried below before the Honorable E. M. Bramlette.

Appeal from a conviction of a violation of the tick eradication law; penalty, a fine of $25.

The opinion states the case.

No brief on file for appellant.

*C. M. Cureton,* Attorney General, and *C. L. Stone,* Assistant Attorney General, for the State.—On question of validity of statute: Mrous v. State, 31 Texas Crim. Rep., 597; McInturf v. State, 20 Texas Crim. App., 335.

MORROW, Presiding Judge.—Appellant is convicted for violating the tick quarantine law.

In Chapter 38, Acts of the Thirty-sixth Legislature, Third Called Session, amending Chapter 60 of the Acts of the Thirty-fifth Legislature, there is found, in Section 15, language in substance as follows: "Any person owning cattle which have the fever-carrying tick upon them or upon any one of them or that are exposed to said fever-carrying tick, or that are on any premises on which the fever-carrying tick is known to exist *or that have sometime, within nine months preceding the issuance of the written direction to dip, hereinafter provided, been exposed to said fever-carrying tick, or been on said premises or other place on which the fever-carrying tick is known to exist, who shall fail to dip, etc."*

Appellant claims that the language italicized renders the law void as an ex post facto law. It is charged in the information that "on the 3rd day of July, 1920, the appellant's cattle were inspected and had been exposed to the fever-carrying tick and had the fever-carrying tick upon them." The law quoted above became effective on the 17th day of June, 1920. It is therefore manifest that if it be granted that that part of the law italicized was not enforceable, the prosecution might be maintained under that part of the law which was not subject to the supposed vice. In other words, if the reference to the nine months quoted was void, it is separable from that part of the law upon which this prosecution is found. Under such circumstances, the valid part of the law should not be destroyed, but the invalid part would be disregarded. Cyc. of Law & Procedure, page 976; Willoughby on Const., Vol. 1, page 17; Ex parte Towles, 48 Texas, 413.

We will add that in our opinion, the authority conferred by the section of the Act quoted upon the Live Stock Sanitary Commission to require by legal notice the dipping of cattle which, within nine months prior to the passage of the Act, have been upon the premises infected by the fever-carrying tick would not be properly classified as an ex post facto law. Black on Interpretation of Laws, 2nd Ed., pages 382-383; Ruling Case Law, Vol. 6, page 290.

Inasmuch as the provision of the law mentioned does not operate in the instant case, a further discussion of its qualities is deemed unnecessary.

The facts disclosed show that the premises of the appellant were within the quarantine zone and where the law for the eradication of fever-carrying ticks was in full force and effect; that the appellant

was given the notice required by law to dip his cattle in a vat situated in the county of his residence, about four miles therefrom; that there had been previously constructed other vats near the premises but that at the time of the notice they were not in condition for use; that the appellant's cattle at the time had fever-carrying ticks upon them and had been exposed to such ticks. No protest or objection is shown to have been made by the appellant to the Live Stock Sanitary Commission against the dipping of his cattle at the time and place mentioned; but appellant refused to have them dipped at the place designated and introduced certain defensive matters, among them, that the solution provided in the dip was not prescribed by law.

In Section 15a of the Act the dip is described as an arsenical solution of a strength not less than seven and one-half pounds, and not more than eight and one-half pounds of arsenic to each five hundred gallons of water in said solution.

One of the witness testified that the solution in the vat mentioned, at the time, was tested and that it was charged wih "an arsenical solution of a strength of not less than 7½ pounds of arsenic to the 500 gallons of water and not more than 8½ pounds of arsenic to the 500 gallons of water; that the strength was approximately 8 pounds of arsenic to each 500 gallons of water; that the dip used was prepared by Sherman-Williams Paint Company and approved by the Live Stock Sanitary Commission, and containing no element, other than arsenic, that could injure cattle in any way."

It is further shown that a solution of arsenic would not result from merely mixing the mineral arsenic with water; that it required proper preparation by cooking with salicylic acid or caustic soda; and that soap and tar were used in the proper preparation of the mixing; that in the cooking process to render the arsenic soluble, all salicylic acid or caustic of soda were entirely consumed before the water was added; and that the particular mixture in use on the occasion in question showed the presence of no salicylic acid or caustic of soda.

Appellant also urged that the hot season of the year and the distance to the vat designated was such that in driving his cattle, which were wild, would injure them; that there was a vat near his premises which could, with slight delay and expense, be repaired, and further that he had used a preparation upon his cows which eliminated the ticks.

In the charge of the court, the authority of the jury to convict was predicated upon their finding from the evidence that appellant unlawfully and wilfully failed and refused to comply with the order to dip his cattle; that if the solution used in the vat was not properly charged, with the solution named in the statute, an acquittal must result. This further instruction was given: "The execution or carrying out of a dipping order may be delayed by the owner or care-taker of the cattle by filing with the Live Stock Sanitary Commission, or its chairman, a written protest against such order, in the form of an affidavit, within five days from the service of such dipping order; but where such step is not

taken by the defendant you will determine from the evidence if the defendant was, in conformity with law, as hereinbefore explained to you, ordered to dip his cattle at the time and place in question, and if he unlawfully and wilfully failed and refused to comply with such order."

The only objection we find filed to the court's charge is in the following language: "That portion of the charge that makes it the duty of the defendant when he has any objections to dipping his cattle that he file his objections in the form of an affidavit with the Live Stock Sanitary Commission and because it in effect abridges the right of the defendant in his defense under his plea of not guilty, and that part of the law only applies to the civil remedy by injunction," and no special charges were requested.

In one of the sections of the Act it is provided, in substance, that a person notified to dip his cattle may, within five days thereafter, file with the Live Stock Sanitary Commission, a protest stating reasons which are deemed sufficient ground for a rescission of the order or the postponement of its execution; that the time for hearing of such protest shall be fixed by the commission, upon which hearing, either in person or by affidavits proof may be made, and if the statements are found correct said dipping directions shall be rescinded. The Act further provides that if the owner is dissatisfied with the action of the Commission, he shall have the right to seek an injunction to stay its order.

We do not dissent from the view of appellant that this provision of the law does not deprive him in a criminal proceeding of the right to urge his defense under the plea of not guilty; and to avail himself of his defenses against the criminal prosecution, it is not necessary that he show that he has taken the steps indicated. In the instant case we do not interpret the charge as in conflict with this view, nor does it appear subject to the criticism embraced in the exception quoted. We think, fairly interpreted, the effect of the provision of the court's charge in question is to advise the jury that, notwithstanding he had failed to protest to the Commission against the dipping order, they would nevertheless determine from the evidence before them whether there was a wilful refusal to comply with the order. It occurs to us that such a charge was favorable to the appellant for the reason that, in its absence, his failure to file a protest with the commission might have been used against him. Doubtless the paragraph of the charge in question might have been framed in more appropriate language but the terms in which it is framed are not complained of and no special charge correcting it was presented. In its substance, we think its tendency was to guard rather than impinge upon the rights of the appellant. In the light of it the jury was directed to determine whether in refusing to obey the order the appellant was in the wrong and wilfully disobeyed it. In other words, the truth and sufficiency of the reasons given by the appellant for declining to dip his cattle after he received the legal

notice to do so were passed upon by the jury and determined against him. Their decision, under the evidence, is regarded as binding upon this court, and the judgment is affirmed.

*Affirmed.*